**Motion to Consider Denied; Affirmed in part, Reversed in part, Remanded, and Memorandum Opinion filed December 17, 2019.**



In the

# Fourteenth Court of Appeals

---

### NO. 14-18-00147-CV

---

### JUAN ENRIQUEZ, Appellant

### v.

### EDUARDO ORIHUELA, M.D., Appellee

---

**On Appeal from the 122nd District Court
Galveston County, Texas
Trial Court Cause No. 17-CV-1173**

---

### MEMORANDUM OPINION

Inmate Juan Enriquez appeals the Travis County district court's granting of appellee Eduardo Orihuela, M.D.'s motion to transfer venue and the Galveston County district court's granting of Orihuela's motion to dismiss. Enriquez argues: (1) venue in Travis County is mandatory under Civil Practice and Remedies Code section 15.014; and the Galveston County district court improperly dismissed with prejudice his claims against Orihuela under (2) section 101.106(f) of the Texas Tort

Claims Act (TTCA) and (3) Civil Practice and Remedies Code section 14.005.

We conclude that the Travis County district court did not err in transferring venue to Galveston County and the Galveston County district court properly dismissed with prejudice Enriquez's tort claims against Orihuela. However, we conclude that the Galveston County district court erred in dismissing with prejudice Enriquez's federal statutory claims based on Eighth Amendment violations pursuant to section 1983 and Enriquez's claims for prospective equitable relief to remedy Texas constitutional violations.

We therefore affirm in part, reverse in part, and remand.

## I.    BACKGROUND

Enriquez is currently housed in the Terrell Unit operated by the Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ-CID).[1]

According to Enriquez, in 2014, when he was housed in the Michael Unit operated by the TDCJ-CID,[2] a prison nurse "referred [him] to a provider" after Enriquez presented at sick call with serious medical symptoms. Senior Warden Eddie Baker did not help Enriquez see a provider, and prison infirmary personnel refused to attend to him. Later, a prison doctor examined Enriquez and requested an expedited transfer to John Sealy Hospital, associated with the University of Texas Medical Branch at Galveston (UTMB), for a scheduled cancer pathology evaluation. Baker did not transfer Enriquez, and prison personnel refused to transport him to John Sealy.

In 2015, a prison nurse practitioner referred Enriquez to John Sealy for acute kidney failure. A hospital resident admitted Enriquez to John Sealy for kidney and

---

[1] The Terrell Unit is located in Brazoria County.

[2] The Michael Unit is located in Anderson County.

prostate issues. A hospital supervising surgeon informed Enriquez that he was diagnosed with benign prostatic hyperplasia (BPH) and the surgeon would perform a procedure to correct the prostate problem. According to Enriquez, a hospital attending physician, Ahmed A. Morsy, M.D., failed and refused to treat Enriquez's kidney failure and to correct his prostate problem and instead approved his discharge.

Subsequently, the prison nurse practitioner diagnosed Enriquez with anemia due to kidney damage. Another hospital resident examined Enriquez at John Sealy but only treated his prostate problem. Orihuela examined Enriquez, "actively participated in the decision-making process undertaken" by the resident, was present for the BPH procedure, and refused "to comply with [Enriquez's] request for treatment for his kidneys and for the anemia." Enriquez's continuing anemia was not treated.

Later in 2015, despite repeated requests to be treated for his kidney and catheter issues and to get the results from recent blood tests, Enriquez did not see a provider for over two months. A prison doctor examined Enriquez, ordered lab tests for a urinary tract infection (UTI), and scheduled a follow-up appointment to select an antibiotic for the UTI. Prison employees did not produce Enriquez for this appointment. Another prison doctor then ordered additional lab tests and scheduled a follow-up appointment. Prison employees also did not produce Enriquez for this appointment. Enriquez's "untreated UTI was so severe" that he was ultimately transported by prison van to Palestine Regional Medical Center and received antibiotic shots for an epididymis infection.

In 2016, Enriquez's epididymis infection returned. Prescribed antibiotics did not work. The prison nurse practitioner ordered antibiotic shots and oral antibiotics. The prison nurse scheduled to administer the shots told Enriquez they were no longer

available. The oral antibiotics took a month to resolve his infection. According to Enriquez, Lannelle Linthicum, M.D., the Director of Medical Services for TDCJ-CID, has a policy and practice of allowing prisoners' serious medical needs to go unattended, undiagnosed, and untreated as dictated by prison policies promulgated and implemented by Dale Wainwright, the chairman of the Texas Board of Criminal Justice (TBCJ); Brad Livingston, the executive director of the TDCJ; and Baker.

In 2017, Enriquez filed suit pro se and claimed indigence in Travis County district court (trial court cause number D-1-GN-16-005852) against Wainwright, Morsy, Orihuela, Linthicum, Livingston, and Baker, both individually and in their official capacities. Enriquez alleged claims of: (1) deliberate indifference to serious medical need of treatment for prostate cancer against Baker; (2) deliberate indifference to serious medical need of treatment for acute kidney failure against Morsy and Orihuela; (3) deliberate indifference to serious medical need to correct benign prostatic hyperplasia (BPH) against Morsy and Orihuela; (4) deliberate indifference to serious medical need of treatment for anemia against Orihuela; (5) deliberate indifference to serious medical need for treatment of UTIs against all "Defendants"; (6) negligence against all "Defendants"; and (7) exemplary damages when his injuries resulted from all "Defendants' gross negligence, malice, or fraud." Enriquez prayed for the following relief: (a) a writ of mandamus directing all "Defendants" to provide him with certain treatment for his BPH not to be performed by doctors connected with TDCJ or UTMB; (b) a writ of mandamus directing all "Defendants" to provide him with evaluation of and treatment for his kidneys not to be performed by doctors connected with TDCJ or UTMB; (c) a writ of mandamus directing all "Defendants" to provide him with treatment for his anemia not to be performed by doctors connected with TDCJ or UTMB; (d) prospective equitable

4

relief; (e) actual, exemplary, and nominal damages; (f) pre- and postjudgment interest; and (g) any other relief in equity or law.

Enriquez alleged that general venue was proper in Travis County—the location of Wainwright's principal office as TBCJ chairman, and of Livington's residence and his principal office as TDCJ executive director. Enriquez alleged that because he sought mandamus relief against the head of a state agency, venue was mandatory in Travis County under Civil Practice and Remedies Code section 15.014. Enriquez further alleged that venue was "proper in Travis County as the injunctive relief sought is ancillary to the tort and other claims made in this lawsuit."

Orihuela filed a motion to transfer venue to Galveston County.[3] Orihuela argued that the complained-of medical care was rendered while Enriquez was being treated at UTMB, a state agency, where Orihuela is a faculty member employee. According to Orihuela, because Enriquez brought his lawsuit against Orihuela in his official capacity as an employee of UTMB, the suit was inherently against UTMB and was governed by the TTCA's mandatory-venue provision. *See* TTCA, Tex. Civ. Prac. & Rem. Code Ann. § 101.102(a). Orihuela filed an affidavit wherein he attested that he was a faculty member for the Department of Urology and salaried employee of UTMB, he received his paycheck from the State of Texas, and his involvement in Enriquez's medical care was pursuant to his employment.[4]

Enriquez filed a motion to strike and a response to Orihuela's motion to transfer venue. Enriquez argued that Travis County was the proper venue because

---

[3] Also contained in our record is Baker's motion to transfer venue to Anderson County pursuant to Civil Practice and Remedies Code section 15.019, Enriquez's motion to strike Baker's motion to transfer venue, Enriquez's reply to Baker's motion to transfer venue, Baker's motion to sever to which Orihuela was unopposed, Enriquez's response to Baker's motion to sever, Baker's reply to Enriquez's response to Baker's motion to sever, and Orihuela's reply to Enriquez's response to severance.

[4] Orihuela also attached his UTMB faculty memoranda of appointment from 2014 to 2017.

he sought mandamus against heads of state agencies (Wainwright as head of TBCJ and Bryan Collier as head of TDCJ[5]) and Orihuela did not deny Enriquez's venue facts. Enriquez also argued that Orihuela was an employee instead of a governmental unit and failed to establish mandatory venue in Galveston County. Enriquez challenged Orihuela's venue facts that he was a governmental unit and that Enriquez was suing UTMB. Enriquez filed a "plea to the jurisdiction" containing similar arguments.

The Travis County district court held a hearing on Orihuela's motion to transfer venue; Enriquez appeared by telephone.[6] The Travis County district court signed an order on July 24, 2017. In pertinent part, the Travis County district court ordered that Enriquez's motion to strike was denied, found that Galveston County was the mandatory venue with respect to Enriquez's claims against Orihuela, found the claims against Orihuela involve separate and distinct causes of action that could be independently asserted against Orihuela in a separate lawsuit and which are not so interwoven with the remainder of the lawsuit so as to involve the same facts and issues, ordered that Enriquez's claims against Orihuela shall be severed and assigned a new cause number,[7] and ordered that after severance Orihuela's motion to transfer venue is granted and Enriquez's case against Orihuela shall be transferred to Galveston County.

After the case was transferred to Galveston County district court (trial court cause number 17-CV-1173), Orihuela filed a motion to dismiss pursuant to TTCA section 101.106(f) and Civil Practice and Remedies Code chapter 14. Orihuela

---

[5] As the case continued, Bryan Collier replaced Livingston as the TDCJ executive director.

[6] The record does not contain a transcript of this hearing, which also concerned Baker's motion to transfer venue and motion to sever.

[7] The new Travis County district court cause number was D-1-GN-17-003624.

argued that Enriquez's healthcare liability claim must be dismissed because: (1) Orihuela met the criteria for dismissal under section 101.106(f) and (2) Enriquez did not prove that he complied with chapter 14's administrative exhaustion requirement in section 14.005.

Enriquez filed an objection and response to Orihuela's motion to dismiss. Orihuela replied. The Galveston County district court on December 8, 2017, signed its order granting dismissal with prejudice. The Galveston County district court stated that it "f[ound] . . . Enriquez is a person housed in a secure correctional facility and therefore subject to the requirements of Civil Practice and Remedies Code Chapter 14–Inmate Litigation" and that there was "[n]o evidence tendered or presented by [Enriquez] showing compliance with [section] 14.005."

Enriquez filed a motion to vacate judgment and a notice of appeal. Orihuela filed a response. Enriquez filed a "supplement to motion to vacate judgment and plea to the jurisdiction." On March 16, 2018, the Galveston County district court signed its order denying Enriquez's motion to vacate.

This court initially dismissed Enriquez's appeal. However, we granted Enriquez's motion for rehearing, withdrew our prior opinion, vacated our prior judgment, and reinstated his appeal.

## II.    ANALYSIS

Prior to submission, and after briefing was completed, Enriquez filed a motion for this court to consider a decision from the Third Court of Appeals—what he described as a "companion case and related issue." *See Enriquez v. Wainwright*, No. 03-18-00189-CV, 2018 WL 6565017, at *1 (Tex. App.—Austin Dec. 13, 2018, no pet.) (mem. op.) (reversing granting of Wainwright's and Linthicum's jurisdictional plea). We carried this motion with the case. Although we deny Enriquez's motion,

7

we note that regardless of any filed motion we generally would—and do—consider all relevant authority as part of our review.

## A. Severance of Enriquez's claims against Orihuela

In its order, along with granting Orihuela's requested transfer of venue, the Travis County district court apparently on its own motion found that Enriquez's claims against Orihuela involve separate and distinct causes of action which could be independently asserted against Orihuela in a separate lawsuit and which are not so interwoven with the remainder of the lawsuit so as to involve the same facts and issues, and severed Enriquez's claims against Orihuela. *See* Tex. R. Civ. P. 41 ("Any claim against a party may be severed and proceeded with separately."); *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990) (op. on reh'g) (claim is properly severable under rule 41 if (1) controversy involves more than one cause of action, (2) severed claim is one that would be proper subject of independently asserted lawsuit, and (3) severed claim is not so interwoven with remaining action that they involve same facts and issues).

Orihuela argues that "Enriquez has waived any argument on appeal that severance was improper or an abuse of discretion." *See Guar. Fed. Sav. Bank*, 793 S.W.2d at 658 ("The trial court's decision to grant a severance will not be reversed unless it has abused its discretion."). We agree. On appeal, Enriquez does not mention, much less challenge, the Travis County district court's decision to sever his claims against Orihuela into a separate lawsuit or advance any argument that the Travis County district court abused its discretion in severing such claims. *See* Tex. R. App. P. 38.1(f). In light of Enriquez's failure to appeal any severance issue, we are constrained to consider his issues based only on his severed claims against Orihuela.

## B. Enriquez's venue issue

### 1. Venue transfer law and standard of review

Because venue may be proper in more than one county, the plaintiff is given the first choice to fix venue in a proper county by filing suit in that county. *See In re Team Rocket*, 256 S.W.3d 257, 259 (Tex. 2008). "All venue facts, when properly pleaded, shall be taken as true unless specifically denied by the adverse party." Tex. R. Civ. P. 87(3)(a). If the defendant, however, challenges the plaintiff's venue choice, the plaintiff must present prima facie proof that venue is proper. *See id.* 87(2)(a), 3(a); *Wilson v. Tex. Parks and Wildlife Dep't*, 886 S.W.2d 259, 260–61 (Tex. 1994). "Prima facie proof is made when the venue facts are properly pleaded and an affidavit, and any duly proved attachments to the affidavit, are filed fully and specifically setting forth the facts supporting each pleading." Tex. R. Civ. P. 87(3)(a). If the plaintiff does not meet this burden or the defendant brings forth "conclusive evidence" that destroys the plaintiff's prima facie proof, then the trial court "shall transfer the case to another county of proper venue." *Wilson*, 886 S.W.2d at 260. If the plaintiff proves venue facts that support venue, then the trial court must maintain the lawsuit in the county where suit was filed unless the motion to transfer is based on an established ground of mandatory venue. Tex. R. Civ. P. 87(3)(c).

We review the district court's venue determination de novo. *See Wilson*, 886 S.W.2d at 261–62. On appeal of a venue determination, we review not only the pleadings and affidavits, but also the entire record. *See* Tex. Civ. Prac. & Rem. Code Ann. § 15.064(b); *Wilson*, 886 S.W.2d at 261. We look for any probative evidence to support the plaintiff's choice of venue, even if the evidence preponderates to the contrary. *See Wilson*, 886 S.W.2d at 262. If any probative evidence supports the plaintiff's choice, then transferring venue is reversible error. *See* Tex. Civ. Prac. & Rem. Code Ann. § 15.064(b); *Wilson*, 886 S.W.2d at 262.

## 2. Galveston County as county of proper venue

In his first issue, Enriquez argues that the district court erred in transferring venue because he seeks mandamus against the head of a state department and therefore venue is mandatory in Travis County. Civil Practice and Remedies Code section 15.014, entitled "Head of State Department," located within subchapter B, entitled "Mandatory Venue," specifically provides: "An action for mandamus against the head of a department of the state government *shall* be brought in Travis County." Tex. Civ. Prac. & Rem. Code Ann. § 15.014 (emphasis added).

In his petition, Enriquez did not allege any "venue" facts specific to Orihuela. In the "parties" section of his petition, Enriquez alleged that Orihuela was a resident of Texas and could be served at UTMB's address in Galveston. Enriquez further alleged that Orihuela was charged with the medical care and treatment of prisoners admitted to UTMB and at all relevant times "was acting under color of law." In addition, within the "facts" section of his petition, Enriquez alleged that Orihuela examined him, was involved in decision-making for his prostate issue, and refused to treat him for his kidney and anemia issues while Enriquez was at John Sealy. Within his "causes of action," Enriquez alleged that Orihuela knew of his BPH diagnosis and that he was allergic to the drugs normally used to treat BPH, yet refused to correct his BPH with an alternative minimally-invasive procedure. Enriquez alleged that Orihuela knew of his kidney failure symptoms and that his kidney failure was chronic, and of his anemia diagnosis, yet refused to treat his kidney and anemia issues.

Orihuela challenged Enriquez's venue choice of Travis County. Orihuela invoked TTCA section 101.102 as a mandatory basis to transfer venue to Galveston County. In addition, Orihuela argued that Enriquez "asserts that he was examined at UTMB ('John Sealy Hospital') on May 28, 2015, by Dr. Orihuela, who refused to

comply with [Enriquez]'s request for treatment for his kidneys and anemia" and "[a]s alleged by [Enriquez,] all the complained of medical care provided by Dr. Orihuela occurred in Galveston County, Texas, where UTMB is located." In his affidavit, Orihuela attested that he was a faculty member for the Department of Urology and salaried employee of UTMB, he received his paycheck from the State of Texas, and his involvement in Enriquez's medical care was pursuant to his employment.

Without the claims against previously-joined state department heads Wainwright and Livingston (Collier), there is no proper basis for mandatory venue in Travis County under section 15.014 for Enriquez's claims against Orihuela. *See* Tex. Civ. Prac. & Rem. Code Ann. § 15.014; *Telfer v. Adams*, No. 05-17-01387-CV, 2019 WL 494023, at *3 (Tex. App.—Dallas Feb. 8, 2019, no pet.) (mem. op.) (concluding when appellants did not challenge severance of claims that no mandatory venue existed based on claims against previously-joined party).

We next consider whether Enriquez presented any prima facie proof that venue otherwise was proper in Travis County. Under the general-venue rule, a suit must be brought in one of the following counties:

> (1) in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred;
>
> (2) in the county of defendant's residence at the time the cause of action accrued if defendant is a natural person;
>
> (3) in the county of the defendant's principal office in this state, if the defendant is not a natural person; or
>
> (4) if Subdivisions (1), (2), and (3) do not apply, in the county in which the plaintiff resided at the time of the accrual of the cause of action.

Tex. Civ. Prac. & Rem. Code Ann. § 15.002(a). Our review of the entire record, however, does not reveal any allegation or probative evidence tending to support

11

that Travis County was a proper county for venue of Enriquez's claims against Orihuela under any subdivision of the general-venue rule. *See id.*

Rather, the record demonstrates that general venue properly lies in Galveston County under subdivision (1) because all or a substantial part of the events or omissions giving rise to Enriquez's claims against Orihuela concerning his alleged refusal to treat Enriquez's prostate, kidney, and anemia issues occurred at John Sealy. *See id.* § 15.002(a)(1). In other words, Galveston County instead of Travis County is a county of proper venue for Enriquez's claims against Orihuela.

Under these circumstances, when the record indicates that Travis County is not a proper venue and that Galveston County is a proper venue, we conclude the Travis County district court did not err in transferring venue of the severed claims against Orihuela to Galveston County.[8] *See Wilson*, 886 S.W.2d at 260.

We overrule Enriquez's first issue.

## C. Enriquez's dismissal issue

Orihuela raised two bases for dismissal of Enriquez's claims against him: (1) application of TTCA section 101.106(f) and (2) Enriquez's failure as an inmate to exhaust his administrative remedies pursuant to Civil Practice and Remedies Code section 14.005. The Galveston County district court dismissed Enriquez's claims against Orihuela with prejudice, expressly stating that Enriquez was subject to chapter 14's requirements and did not present evidence that he complied with section 14.005's requirement to exhaust his administrative remedies.

Enriquez attacks both bases for the Galveston County district court's

---

[8] Because we must uphold a trial court's decision on any legal theory that supports it, *see Guar. Cty. Mut. Ins. Co. v. Reyna*, 709 S.W.2d 647, 648 (Tex. 1986) (per curiam), we do not address whether mandatory venue for Enriquez's claims against Orihuela lies in Galveston County under TTCA section 101.102(a). *See* Tex. R. App. P. 47.1.

12

dismissal. We first consider Enriquez's third issue challenging the Galveston County district court's stated reason for dismissal of his claims against Orihuela based on Enriquez's lack of compliance with section 14.005.

## 1. Chapter 14's exhaustion requirement

Chapter 14 of the Civil Practice and Remedies Code governs inmate litigation. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 14.001–.014. Under this chapter, a trial court has discretion to dismiss an inmate's suit if it finds that the claim is frivolous or malicious. *See* Tex. Civ. Prac. & Rem. Code Ann. § 14.003; *Martinez v. Thaler*, 931 S.W.2d 45, 46 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (per curiam). A trial court abuses its discretion if it acts arbitrarily, capriciously, or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). A claim is frivolous if it has no basis in law or fact. *See* Tex. Civ. Prac. & Rem. Code Ann. § 14.003(b)(2). "A claim has no arguable basis in law if a prisoner has failed to exhaust his administrative remedies." *Retzlaff v. Tex. Dep't of Crim. Justice*, 94 S.W.3d 650, 653 (Tex. App.—Houston [14th Dist.] 2002, pet. denied); *see* Tex. Civ. Prac. & Rem. Code Ann. § 14.005.

In his motion to dismiss, Orihuela argued that prior to filing suit Enriquez was required to exhaust his administrative remedies "available through the" TDCJ and attach required documentation in support of his petition. According to Orihuela, Enriquez was required to submit "Step 1" and "Step 2" written offender grievances through the TDCJ and receive responses prior to filing his suit. *See* Tex. Civ. Prac. & Rem. Code Ann. § 14.005; Tex. Gov't Code Ann. § 501.008 (inmate grievance system).

Enriquez does not dispute that his action is subject to chapter 14 governing

inmate litigation.[9] Rather, in his third issue, he contends that his claims against Orihuela are not subject to section 14.005's requirements regarding exhaustion of administrative remedies pursuant to the grievance system under Government Code section 501.008 because Orihuela was employed by UTMB, not TDCJ.[10] Enriquez contends the "statute in question here is clear and unambiguous" that the "remedy provided by the grievance system is the exclusive administrative remedy available to an inmate for a claim for relief against the department." Therefore, the Galveston County district court did not have discretion to dismiss Enriquez's claims against Orihuela with prejudice on this basis. We agree.

Our resolution of this issue involves statutory construction, which is a question of law we review de novo. *See State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). When interpreting a statute, our goal is to ascertain the legislature's intent. *Id.*; *see* Tex. Gov't Code Ann. § 312.005. The best guide to that determination is usually the plain language of the statute. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex. 1999). We must view the statute as a whole, and we must endeavor to read the statute contextually and give effect to every word, clause, and sentence. *Id.* at 866; *Tex. Dep't of Ins. v. Am. Nat'l Ins. Co.*, 410 S.W.3d 843, 853 (Tex. 2012). We read the words and phrases in context and construe them according to the rules of grammar and common usage. *See* Code Construction Act, Tex. Gov't Code Ann. § 311.011(a).

Section 14.005, entitled "Grievance System Decision; Exhaustion of Administrative Remedies," provides:

(a) An inmate who files a claim that is subject to the grievance system

---

[9] Although Enriquez disputed this point below, he does not do so on appeal.

[10] Enriquez raised this argument in his motion to vacate judgment.

14

established under Section 501.008, Government Code, shall file with the court:

> (1) an affidavit or unsworn declaration stating the date that the grievance was filed and the date the written decision described by Section 501.008(d), Government Code, was received by the inmate; and

> (2) a copy of the written decision from the grievance system.

(b) A court shall dismiss a claim if the inmate fails to file the claim before the 31st day after the date the inmate receives the written decision from the grievance system.

Tex. Civ. Prac. & Rem. Code Ann. § 14.005.

In pertinent part, Government Code section 501.008, entitled "Inmate Grievance System," provides:

> The department shall develop and maintain a system for the resolution of grievances by inmates housed in facilities operated by the department or under contract with the department . . . . A remedy provided by the grievance system is the exclusive administrative remedy available to an inmate for a claim for relief against the department that arises while the inmate is housed in a facility operated by the department or under contract with the department, other than a remedy provided by writ of habeas corpus challenging the validity of an action occurring before the delivery of the inmate to the department or to a facility operated under contract with the department.

Tex. Gov't Code Ann. § 501.008(a).

Under applicable Government Code subtitle G, the definition of "department" as used in section 501.008 is "the Texas Department of Criminal Justice." Tex. Gov't Code Ann. § 491.001(a)(3); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 14.001(2) (providing same definition).

When read in conjunction, the statutory language clearly and unambiguously indicates the section-501.008 grievance system providing for an exclusive administrative remedy that inmates must exhaust and show compliance with under

15

section 14.005 applies when an inmate is pursuing a "claim for relief *against the department* that arises while the inmate is housed in a facility operated by the department or under contract with the department." Tex. Civ. Prac. & Rem. Code Ann. § 14.005; Tex. Gov't Code Ann. 501.008(a) (emphasis added); *see Leachman v. Dretke*, 261 S.W.3d 297, 312 (Tex. App.—Fort Worth 2008, no pet.) (op. on reh'g) (section 14.005's administrative exhaustion requirement did not apply to inmate's claims against non-TDCJ employee). Interpreting section 14.005's requirement to exhaust the exclusive administrative remedies available under the grievance system (developed and maintained by TDCJ) as applying only when an inmate seeks a claim for relief against TDCJ comports with and gives effect to the plain language of the statutory scheme and does not lead to an absurd result.

The claims at issue involve Enriquez's claims against Orihuela, an employee of UTMB, not of TDCJ.[11] Enriquez did not allege and Orihuela does not contend that Orihuela is employed by TDCJ. Orihuela averred that he is employed by UTMB. Because Enriquez's claims against Orihuela do not seek relief against TDCJ, they were not subject to the grievance system established under section 501.008, and accordingly are not subject to section 14.005's requirement to exhaust administrative remedies.

Orihuela attempts to rely on *Retzlaff* and *Gilbert v. Texas Department of Criminal Justice-Institutional Division*, No. 09-16-00298-CV, 2017 WL 3975687 (Tex. App.—Beaumont Aug. 31, 2017, no pet.) (mem. op.). *Retzlaff* and *Gilbert*, however, involved claims brought by plaintiff inmates *against* TDCJ or its

---

[11] Texas courts have agreed that the exhaustion requirement applies in inmate cases brought against employees of TDCJ. *Compare Jedkins v. Varghese*, No. 14-08-00895-CV, 2009 WL 5149877, at *2 (Tex. App.—Houston [14th Dist.] Dec. 31, 2009, no pet.) (per curiam) (mem. op.) ("Inmate complaints about actions of TDCJ employees are subject to the grievance procedure."), *with Leachman*, 261 S.W.3d at 312 ("[B]ecause [Harris County assistant district attorney] Oncken was not a TDCJ employee, the exhaustion requirement addressed above does not apply.").

16

employees. *Gilbert*, 2017 WL 3975687, at \*1, 3–4; *Retzlaff*, 94 S.W.3d at 651–53. Here, the only claims at issue are against Orihuela, not TDCJ or any employee of TDCJ.

We also reject Orihuela's argument that section 14.005 applies because UTMB is "a facility operated under a contact with the TDCJ to provide correctional managed health care services." Even assuming this were the case,[12] section 501.008 clearly and unambiguously states that the administrative remedy provided by the grievance system is exclusive when the inmate is pursuing a claim for relief "*against the department*," not against a party with which TDCJ may choose to contract. *See* Tex. Civ. Prac. & Rem. Code Ann. § 501.008(a) (emphasis added).

We conclude that the district court abused its discretion by dismissing Enriquez's suit against Orihuela with prejudice based on noncompliance with section 14.005. Accordingly, we sustain Enriquez's third issue.

## 2. TTCA section 101.106(f)

Although the Galveston County district court's order stated that it was dismissing Enriquez's suit against Orihuela for noncompliance with section 14.005, we also consider Orihuela's other ground for dismissal under TTCA section 101.106(f). *See Johnson v. Lynaugh*, 796 S.W.2d 705, 706–07 (Tex. 1990) (per curiam) (appellate court should affirm dismissal if proper under any legal theory); *see also Guar. Cty. Mut. Ins. Co. v. Reyna*, 709 S.W.2d 647, 648 (Tex. 1986) (per curiam) (well-settled rule is appellate court will affirm decision of trial court on any legal theory supported by evidence, regardless of whether trial court gives correct legal reason or any reason at all).

---

[12] In his response to Enriquez's motion to vacate, Orihuela cited a webpage based on a UTMB contract search, which on review appears to now be subject to linkrot. Orihuela did not offer this contract as an exhibit in the trial court.

17

The TTCA provides a limited waiver of immunity from suit and liability for certain tort claims against a governmental unit. TTCA, Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001–.109. The TTCA includes a comprehensive election-of-remedies provision in section 101.106. *See id.* § 101.106.

A motion to dismiss filed by an employee pursuant to section 101.106(f) essentially acts as a challenge to the trial court's subject-matter jurisdiction, which we review de novo. *See Franka v. Velasquez*, 332 S.W.3d 367, 371 n.9 (Tex. 2011) (in seeking dismissal under section 101.106(f), defendant is asserting claim of governmental immunity); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 221, 227–28 (Tex. 2004) (when appellate court reviews appeal of denial of jurisdictional plea asserting sovereign immunity, and evidence was presented to trial court, appellate court addresses de novo whether evidence raises material issue of fact); *Moore v. Barker*, No. 14-17-00065-CV, 2017 WL 4017747, at *2 (Tex. App.—Houston [14th Dist.] Sept. 12, 2017, no pet.) (mem. op.).

Section 101.106(f) provides:

> (f) If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

TTCA § 101.106(f).

In his motion to dismiss, Orihuela argued that Enriquez's "healthcare liability claim against . . . Orihuela must be dismissed . . . because [he] meets the three (3) criteria for dismissal under section 101.106(f)." That is, (1) Orihuela was an

employee of UTMB at the time he saw Enriquez as a patient; (2) Enriquez's healthcare liability claim against Orihuela alleged negligent conduct "within the general scope" of his employment as a physician at UTMB; and (3) Enriquez's healthcare liability claim against Orihuela could have been brought against his employer UTMB.

As to the first prong, there is no dispute that UTMB is a governmental unit of the state of Texas. *See* Tex. Educ. Code Ann. §§ 65.02(a)(8), 74.001; *Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 298 (Tex. 1976). There is also no dispute that Orihuela was employed by UTMB at the time of the conduct at issue.

With regard to the second prong, Orihuela argued Enriquez alleged that his care was negligent and breached the duty of care by failing to diagnose and treat Enriquez's kidney, prostate, and anemia issues. Orihuela specifically referenced Enriquez's negligence claim. According to Orihuela, the allegations encompass conduct performed within the general scope of Orihuela's employment.

With regard to the third prong, Orihuela contended that "any tort theory alleged against a governmental employee, who was acting in the general course and scope of [his] employment with the governmental unit at the time of the alleged negligent conduct, must be dismissed pursuant to [TTCA] § 101.106(f)" because it could have been brought under the TTCA against UTMB.

Both below and on appeal, Enriquez argues that the TTCA does not apply and the district court erred to the extent it relied on the TTCA in dismissing his case. He notes his suit included claims against Orihuela (1) under title 42, United States Code, section 1983, based on multiple instances of deliberate indifference to Enriquez's serious medical needs that violated his Eighth Amendment right to be free from cruel

and unusual punishment[13] and (2) requesting prospective equitable relief to remedy violations of article I, section 19, of the Texas Constitution.[14] He also contends that the TTCA does not apply to Orihuela's "ultra virus [sic]" acts in refusing to treat Enriquez.

On appeal, Orihuela argues that the Galveston County district court did not base its dismissal on section 101.106 and Enriquez can present no "error of law" under Rule of Appellate Procedure 44.1. But we already have concluded that the district court erred in basing its dismissal of Enriquez's claims against Orihuela on section 14.005.

We disagree with Enriquez that section 101.106(f) has no application here. Enriquez pleaded claims of negligence against, and sought exemplary damages based on gross negligence, malice, or fraud from Orihuela for conduct that occurred while he was providing Enriquez medical treatment at John Sealy within the general scope of his employment for UTMB. These tort claims "could have been brought" under the TTCA against UTMB. *See* TTCA § 101.106(f); *Franka*, 332 S.W.3d at 369, 375–85 (for purposes of section 101.106(f), tort action "could have been brought under" TTCA even if tort action does not fall within TTCA's limited waiver of immunity); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008) ("Because the Tort Claims Act is the only, albeit limited, avenue for

---

[13] *See* 42 U.S.C.A. § 1983 (West 2012) ("Every person who, under color of any statute, ordinance, or regulation, custom, or usage, of any state . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."); *Estelle v. Getty*, 429 U.S. 97, 104 (1976) (deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain proscribed by Eighth Amendment).

[14] *See* Tex. Const. art. I, § 19 ("No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."); *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995) (explaining that "suits for equitable remedies for violation of [Texas] constitutional rights are not prohibited").

common-law recovery against the government, all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be 'under [the Tort Claims Act]' for purposes of section 101.106."). In addition, based on our review of Enriquez's petition, he did not allege that Orihuela acted ultra vires, *i.e.*, without any legal authority or by failing to perform a purely ministerial act. *See Franka*, 332 S.W.3d at 382 & n.69 (citing *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 (Tex. 2009)). Therefore, with regard to Enriquez's common-law tort claims against Orihuela, the Galveston County district court did not err in dismissing those claims with prejudice.

However, Orihuela did and does not dispute that Enriquez also brought additional claims against Orihuela individually under section 1983 and for prospective equitable relief for Texas constitutional violations, or specially except to such claims. Orihuela only addressed Enriquez's "healthcare liability claim" against him in his motion to dismiss based on section 101.106(f). And on appeal, Orihuela addresses "Enriquez's common law tort theories," that is, "damage claims that would be within the scope of the" TTCA.

"A federal statutory claim brought under 42 U.S.C. § 1983 . . . , however, is not a suit 'under this chapter.'" *Fontenot v. Stinson*, 369 S.W.3d 268, 272–73 & n.5 (Tex. App.—Houston [14th Dist.] 2011), *aff'd*, *Stinson v. Fontenot*, 435 S.W.3d 793 (Tex. 2014) (construing phrase "under this chapter" as used in TTCA section 101.106). In addition, the parties do not provide and we have not located any authority indicating that claims for prospective equitable relief to remedy Texas constitutional violations qualify as common-law tort claims that could be brought under the TTCA. Therefore, we conclude that the district court could not have properly dismissed with prejudice pursuant to section 101.106(f) Enriquez's section-1983 claims based on Eighth Amendment violations and his claims for

21

prospective equitable relief to remedy Texas constitutional violations against Orihuela. *See Hamilton v. Pechacek*, No. 02-12-00383-CV, 2014 WL 1096018, at *4–5 (Tex. App.—Fort Worth Mar. 20, 2014, no pet.) (mem. op.) (trial court erred in dismissing inmate plaintiff's section-1983 excessive-force claim against TDCJ correctional officer based on section 101.106(f)).

We partially sustain Enriquez's second issue.[15]

### III.  CONCLUSION

Accordingly, we affirm in part and reverse in part the Galveston County district court's judgment. We affirm the dismissal with prejudice of Enriquez's tort claims against Orihuela, reverse the dismissal with prejudice of Enriquez's section-1983 claims and claims for prospective equitable relief against Orihuela, and remand the case for additional proceedings.


/s/    Charles A. Spain
       Justice


Panel consists of Justices Wise, Zimmerer, and Spain.

---

[15] We express no opinion on whether Enriquez's section-1983 claims and claims for prospective equitable relief against Orihuela have any legal or factual merit. We conclude only that section 101.106(f), relied on by Orihuela as the basis for the dismissal of this suit, cannot support dismissal of these claims. *See Hamilton*, 2014 WL 1096018, at *5 n.8.